**CITY OF ALVARADO, TEX., v. CHRISTIAN et al.***

No. 8889.

Circuit Court of Appeals, Fifth Circuit.

Dec. 1, 1938.

*Rehearing denied Jan. 16, 1939.

T. Wesley Hook, of Alvarado, Tex., for appellant.

A. B. Huguenin, of Dallas, Tex., and Justus H. Fugate, of Wichita, Kan., for appellees.

Before SIBLEY, HUTCHESON, and McCORD, Circuit Judges.

SIBLEY, Circuit Judge.

The decree appealed from upheld the court's jurisdiction, and denied that indispensable parties were lacking; gave judgment in favor of the complainant and an intervenor on past-due bonds and coupons against the City of Alvarado, and distributed funds on hand; and enjoined the City, so long as its taxing power was insufficient to discharge interest and principal requirements each year, from dividing out the tax income as by ordinance it had done, and required an apportionment among the several bond issues according to the principal amounts outstanding on each issue. The City was also enjoined from compromising delinquent taxes unless suit be filed in some court and the compromise ratified by the court; and from valuing property for taxation at less than its true full money value.

The principal facts are that the City has outstanding bonds arising from six issues at different dates to an aggregate of $92,000 principal, and that interest and principal is in default on all save a $5,000 issue of school bonds. Since the bonds were issued the tax values in the City have shrunk about half, and the full taxing power of the City for several years has not been sufficient to run the City, pay the interest and maintain the required sinking funds. In the summer of 1937 the City proposed to refund all save the school bonds referred to above by substituting new bonds for a principal reduced by twenty percent, and with a very much reduced interest. Ordinances were apparently passed, though they are not in the record, which provided for this refunding, and fixed for 1937 and future years a pro rating of the taxes which the City could levy, which assigned to the City's current needs one-third and to each bond issue a part of the remainder which was proportioned approximately to the several prin-

cipals outstanding before the refund, rather than to the reduced principal afterwards, except that the school bonds were more liberally treated on the ground that in previous years they had been discriminated against. The largest creditor, Illinois Bankers Life Ins. Co., having $33,000 of bonds to be refunded, indicated that it would accept the plan. Cleve Christian, having become the assignee from certain Texas citizens of more than $3000 of bonds to be refunded, brought a bill to enjoin the City's proceedings and to recover judgment and collect such principal and interest as was past due. The Texas citizens were allowed to intervene touching other bonds which they had, so that $38,000 of bonds stood in resistance to the plan. The bill was filed Nov. 12, 1937. On Nov. 13th the City passed a more elaborate ordinance providing for the issuance and form of the refunding bonds, and for fixing the proportion of the future taxation which was to go to each, for the obtaining of the certification of the new bonds by the State Attorney General, and the exchange of new for old. The answer filed Dec. 20, 1937, states that the refunding arrangements had been accepted by a large percentage of the creditors, but that on account of this suit the Attorney General had held the matter up. The answer asked dismissal of the bill because Christian's ownership of the bonds was fictitious and only a plan to obtain jurisdiction in a federal court, and on the ground that the other bondholders were indispensable parties. It resisted the control by the court of the City's financial affairs, and maintained the correctness of all the City's actions. It is stated in the evidence that the Illinois Bankers Insurance Company had before the trial actually exchanged its old bonds for the new, on the faith of the refunding ordinance. The effect of the decree on this creditor is to reduce by one-fifth the payment each year on his indebtedness, after his sacrifice of one-fifth of his principal and the larger part of his interest by the refunding process.

■ On the question of federal jurisdiction, the evidence shows that complainant's bonds payable to bearer were acquired from citizens of Texas, but the provisions of 28 U.S.C.A. § 41(1) render that fact not important. If he really became the owner and bearer of the bonds his citizenship in another State entitles him to enter a federal court. Bullard v. City of Cisco, 290 U.S. 179, 54 S.Ct. 177, 78 L.Ed. 254, 93 A.L.R. 141. He testifies he bought them and gave a note for their purchase price. While the purchase of bonds on a credit may be unusual, it is not incredible. The court did not err in holding Christian to be an owner and not a mere agent to sue.

■ We are of opinion that the court should not have given the relief it did without an opportunity to bondholders adversely affected to be heard. It could of course render judgment against the City alone for the indebtedness, and it could proceed ordinarily to enforce payment by requiring the levy of a tax for the purpose. If this would prejudice other creditors they ordinarily would have to intervene for their own protection. But the complainant here in his bill advises the court that the City has other creditors, that its lawful ability to tax is insufficient for all, that a proration is necessary; that the City has made one, but the complainant wishes it rescinded and another made. Whatever advantage the complainant gets by the change must be at the expense not of the City which he sues, but of others having rights similar to his own. Upon a bill thus framed the court ought not to proceed without hearing the real parties at interest. No obstacle appears why they may not be made parties. The Illinois Bankers Life Insurance Company, for instance, had $33,000 of bonds which if unrefunded would, on the theory of proportional sharing in the taxation set up by complainant, have its prorata share. After sacrificing one-fifth of the principal, it would receive one-fifth less taxes. But the sacrifice was made, the City says, on the faith of the ordinance which in effect promised there should be no sacrifice in the taxes afterwards to be paid over. The City thinks that to destroy the ordinance would be unfair to this creditor, entitling it perhaps to a rescission of the bond exchange, and that would deprive the City of the great advantage it now has in the reduction of its debt. The creditor ought to be before the court to say why it proceeded with the exchange of bonds pending this suit, if it did; whether it desires to retain the new bonds and contend for the validity of the ordinance, or to rescind; that the court may have the full truth and consider the just rights of all parties. In like manner, the owner of the $5,000 school bonds which are said

to be inequitably preferred in the ordinance ought to have opportunity to defend the preference. All the bondholders should be heard and be bound by the decision on these questions, and on the broader question as to how far the court at the instance of creditors may control the fiscal affairs of a city which has neither sought receivership under the Texas statute, Revised Statutes of Texas Art. 1024, nor relief under the federal bankruptcy law, 11 U.S.C.A. § 1 et seq. The question of enjoining generally the City from making compromise of tax claims is akin. We express no opinion on these matters, but remand the case with direction to take proper steps to make the other bond creditors of the City parties, and to reopen the decree as to matters in which they have an interest, and to rehear them.

Reversed and remanded.