## IKELER et al. v. DETROIT TRUST CO. et al.

No. 7644.

District Court, E. D. Michigan, S. D.
Nov. 22, 1939.

644

Lucking, Van Auken & Sprague, of Detroit, Mich., for plaintiffs.

Miller, Canfield, Paddock & Stone, of Detroit, Mich., for defendants.

PICARD, District Judge.

Plaintiff, Philip M. Ikeler of Mississippi, has an interest in certain timberlands of Oregon, evidenced by Trust 843; plaintiff Amy Gerhauser of Ohio, is the owner of an $^{100}/_{1941}$ interest in other timberlands of the same state, evidenced by Trust No. 704; and defendant Merton E. Farr is the owner of an interest of a like nature evidenced by Trust No. 502. Detroit Trust Company is the trustee of these three trusts, together with Trust No. 610 also in Oregon, acting as it claims under direction of the real owners of the property, being instructed in each instance through a syndicate committee of each trust. Detroit Trust Company claims these several committees directed every move of the trust company in connection with said properties.

In 1929 the trustee through the Mc-Phersons, agents of the syndicate members as managers of Syndicate No. 502, entered into a contract with the East Side Logging Company, which proceeded to cut and remove timber from Trust 502, but failed to remove slashings and stumps as provided by the Oregon law. In August 1933 fire broke out on the property covered by Trust 502, due presumably to failure of the logging company to properly clean up after its operations, which fire spread to Trusts 610, 843 and 704, causing damages resulting in a law suit by other timber owners not parties to this suit whereby Detroit Trust Company, after notice to the syndicate owners of 502, had to pay considerable monies by settlement. The trustee has been reimbursed by some owners of interests in syndicate 502. Plaintiff, Amy Gerhauser, received her interest in 704 August 11th, 1936, from her father, Merton E. Farr, one of the co-defendants. Three days later she and plaintiff, Philip M. Ikeler, through Merton E. Farr's attorneys, brought action against Detroit Trust Company and the McPhersons, claiming collusion between them for making the logging company contract with a financially irresponsible concern. Plaintiffs state that the contract was made because the logging company owed the Mc-

Pherson interests and that since it had no financial responsibility and had together with McPhersons and Detroit Trust Company neglected to comply with provisions of the Oregon law, plaintiffs had suffered great damages by spreading of the fire from 502 to properties 704 and 843 in which they had an interest. Merton E. Farr is made a defendant only "as a member of syndicate 502".

A close perusal of the chronological order of the several steps, taken by parties plaintiff and Farr, indicate that the suit as started was undoubtedly an effort on the part of Philip M. Ikeler and Farr's daughter, to institute action in the federal court just so that Merton E. Farr could plant a counter-claim against Detroit Trust Company and the McPherson interests on the same theory of mismanagement, fraud and collusion as did plaintiffs. This is not strenuously denied by plaintiffs since the bill of complaint invites other members and owners of interests in 502 to become parties plaintiff, and most significant of all, although Merton E. Farr is made a defendant, no relief in the prayer is sought against him, the entire blame being placed upon Detroit Trust Company and the McPhersons. Farr, the McPhersons and Detroit Trust Company are all residents of Michigan.

■ There are really three questions in the case:

First, Can Detroit Trust Company having answered the counter-claim of co-defendant Farr attack the question of jurisdiction?

■ We find that a jurisdictional question may be asserted at any time and that the court might even find without any motion that there is no jurisdiction between the parties.

■ "Where a case is not within the general federal jurisdiction, such want of jurisdiction is fatal at every stage and cannot be cured by consent of parties, or by waiver of objection. Where such objection is presented by the record, it must be considered and determined by the court, although not raised by either party, and since the act of 1875, it has been the statutory duty of the court to dismiss the suit whenever it appears that the suit does not really and substantially involve a dispute or controversy within the jurisdiction of the court." 25 C.J. 781.

See, also, Prosperity Co. v. American Laundry Machinery Co., D.C., 7 F.Supp. 585, 586:

"* * * nor does the court think that plaintiff is precluded from filing this motion by reason of the fact that it has heretofore filed an answer to the counterclaim. * * *

"The motion is filed under the authority of Equity Rule No. 29 (28 U.S.C.A. [following] § 723), under which plaintiff is not barred or estopped from moving to dismiss the counterclaim simply because it had previously filed an answer or reply thereto."

■ Second, Is transfer of a claim by subterfuge for the purpose of bringing an action in the federal court such collusion as to be jurisdictionally fatal when subject to attack?

Our answer to that is "no".

■ The great weight of authorities find no objection to parties deliberately and intentionally by transfer, sale, lease, or otherwise, creating diversity of citizenship so as to permit an action in the federal court and they further hold that motive has nothing to do with the legality of such action, as evidenced by the following citations: King v. Kansas City Police Relief Ass'n, D.C., 60 F.2d 547, 549; Bullard v. Cisco, 290 U.S. 179, 54 S.Ct. 177, 78 L.Ed. 254, 93 A.L.R. 141; Mexican Central R. Co. v. Eckman, 187 U.S. 429, 23 S.Ct. 211, 47 L.Ed. 245; Peterson v. Sucro, 4 Cir., 93 F.2d 878, 114 A.L.R. 890; Black & White Taxicab & Transfer Co. v. Brown & Yellow Taxicab & Transfer Co., 276 U.S. 518, 48 S. Ct. 404, 405, 72 L.Ed. 681, 57 A.L.R. 426.

In the Black & White Taxicab & Transfer Company case, supra, the court said: "In these circumstances, courts will not inquire into motives when deciding concerning their jurisdiction."

Nor does it appear that even unseemly cooperation between Farr and plaintiffs is necessarily fraudulent. Wheeler v. City & County of Denver, 229 U.S. 342, 33 S.Ct. 842, 57 L.Ed. 1219; Quinlivan et al. v. Dail-Overland Co. et al., 6 Cir., 274 F. 56. But it will be noticed that practically all of these holdings indicate a complete severance of interest between the new party having the right of action and the party from which the new owner derives that right. In other words, the transferrer may ultimately benefit and defend-

646

ant obliged to defend himself in a federal court, but none of those cases is authority for the contention that the transferrer may make his transfer for the purpose of creating diversity of citizenship as preliminary to the ultimate objective of making it possible for him to "start" an action by counter-claim against someone he couldn't have sued properly in the federal court in the first place.

■ This brings us to the next question, which is:

Third, Granting that Farr may deliberately create the situation of diversity of citizenship so action may be brought in the federal court, should it be permissible to create this same situation for the sole purpose of gaining an advantage in the way of a counter-claim by a co-defendant, whose interest and activities dominate the entire proceeding?

Plaintiffs had a perfect right to make Farr a party defendant as a joint tortfeasor. Farr had a perfect right to make a bona fide transfer to his daughter so that she could be a party plaintiff. Under present rule 14, 28 U.S.C.A. following section 723c, plaintiffs could have sued defendant Farr who could then have brought in defendant Detroit Trust Company, or the Detroit Trust Company could have been made principal defendant and Farr with the other real owners of 502 being in turn made third parties defendant by the trust company.

Making allowance for the liberality of the new rules, however, there are still some jurisdictional questions remaining for our federal courts and rule 14 is not one of mere convenience. It is one of real right. It was not expected that rule 13 plus rule 14 could be juggled around regardless of the good faith and intentions of the parties and to this court it is so obvious that the real reason back of this law suit is to permit defendant Farr to bring into federal court an action against Detroit Trust Company that ought to be litigated in a state court, that we believe this is one of the cases where this should not be permitted.

It appears to this court that Farr is in truth a plaintiff, not a defendant, and that the mere naming of a person as a defendant in order to circumvent the clear restrictions imposed by jurisdiction is not to be condoned lightly when directed to the attention of the court. In our opinion

it is not unlike action by a guest passenger who brings suit in his own county against the driver, knowing he has no case against him because of Michigan's guest passenger act, but joins as a co-defendant the driver of the other car in the collision in order to bring that co-defendant into a venue friendly to plaintiff; or again the practice of appointing a foreign administrator so that action could be brought in the federal court, both of which practices have been prohibited either by the decisions or by law. See Act No. 240, P.A.1935. Forest Oil Company v. Crawford, 3 Cir., 101 F. 849; Clauss v. Palmer Union Oil Co., 9 Cir., 222 F. 870; Foster on Federal Practice, vol. 1, section 40; Blacklock v. Small, 127 U.S. 96, 8 S.Ct. 1096, 32 L.Ed. 70; Detroit Tile & Mosaic Co. v. Mason Contractors' Ass'n, 6 Cir., 4 F.2d 729; De Graffenreid v. Yount-Lee Oil Co., 5 Cir., 30 F.2d 574.

In the present matter there is now pending in the circuit court an action for contribution by Detroit Trust Company against Farr. It is an entirely different suit from that of plaintiffs against Detroit Trust Company, but had Farr been a bona fide party defendant in this action and had plaintiffs been seeking judgment against him as a joint tort feasor with Detroit Trust Company and other owners of 502, then Farr, under the present rules, could have filed his counter-claim versus Detroit Trust Company and the McPherson interests, thus avoiding multiplicity of suits.

But here Farr is not a real defendant. He just divested himself of a little piece of his interest for the purpose of creating diversity of citizenship. With this we have no quarrel. However, when he confirms our suspicions by filing a counter-claim which adopts the entire theory of plaintiffs' case and is in no danger of being hurt himself as a party defendant, we are of the opinion that if there is anything left to "jurisdiction" this is where a halt should properly be called.

We don't believe the elasticity of the federal rules is sufficient to retain jurisdiction permitting the creation of two questionable fact situations, One, transfer of the claim, the good faith of which this court might question, and Two, the joining of one as a will-of-the-wisp defendant, who when he assumes "body" is in truth a plaintiff.

We believe that the attitude of the courts in general is expressed by Judge Taft in Industrial & Mining Guaranty Co. v. Electrical Supply Co. et al., 6 Cir., 58 F. 732, 745, where he said: "The whole object of the bill was to enable Tillotson, a defendant, a citizen of Ohio, to file a cross bill against codefendants named in the bill, citizens of Ohio and other states, and thus obtain in the federal court an adjudication of a controversy ordinarily cognizable only in the state courts. It was clearly a case where the jurisdiction of the federal court had been collusively sought. This appeared at the hearing upon the motion to continue the injunction, and should have led the circuit court to dissolve the injunction. It it said that the jurisdictional question involved ought to have been regularly raised upon the record, by plea or otherwise. We are not concerned with that question of procedure here. The issue before the circuit court was whether an order enjoining the defendants from selling certain bonds should be continued pending the trial of issues raised upon bill and answer and cross bill and answer. The circuit court was made to know that its equitable jurisdiction had been collusively and improperly invoked. It then became its duty not to continue the injunction."

Giving plaintiffs benefit of all doubt and assuming that perhaps they are so convinced of the sole guilt of Detroit Trust Company and the McPherson interests that they felt that joining of Farr and the others would in truth be but a formality, we then pass over the question of the right of plaintiffs under the circumstances to be in this court at all, an objection not strenuously argued by defendant. However, this does not extend to the counter-claim and if the counter-claim is insisted upon under the present pleadings, then we believe it would be our duty to put plaintiffs all together on one side of the fence and defendants on the other side. Obviously if this had been done in the first place the parties would not now be in federal court.

The motion to strike the counter-claim of defendant Farr is granted and the motion for an injunction to prevent the prosecution of Detroit Trust Company's suit in the circuit court as against Farr is accordingly denied.

So ordered.