Robert J. NAGLE, Plaintiff,

v.

LaSALLE NATIONAL BANK, a National Banking Association, Defendant.

No. 76 C 742.

United States District Court, N. D. Illinois, E. D.

July 5, 1979.

Richard J. Phelan, Roseann Oliver, Phelan & Pope, Chicago, Ill., for plaintiff.

Merrick S. Rayle, Howard B. Prossnitz, Sonnenschein, Carlin, Nath & Rosenthal, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

CROWLEY, District Judge.

This case is based on a four count complaint. Robert J. Nagle (Nagle) alleges breach of contract, negligence, fraud, and breach of fiduciary duty by LaSalle National Bank (the Bank) for paying out 27 wire transfers totalling $304,622.62 from a two-signature account maintained by G. L. Doyle & Co., Inc. (GLD). The Bank does

not deny that the funds were paid without the necessary authorization. This matter is now before the Court on the Bank's motion for summary judgment.

GLD was organized in 1967 by its president and chief operating officer, Garrett Doyle (Doyle). The company was in the business of purchasing and selling beef and lamb. In 1968, GLD experienced severe financial difficulties and Doyle retained an attorney to attempt to reach an agreement with the company's creditors. Eventually, an arrangement was made and incorporated in an Extension Agreement dated December 9, 1968. The creditors agreed not to enforce their claims as long as GLD complied with a deferred installment payment plan.

In addition, several oversight safeguards were established for the creditors. A Creditors' Committee (the Committee), of which plaintiff was chairman, was formed to review the financial condition of GLD. For assistance, the Committee retained an attorney, Henry Rothenberg, to supervise all invoices paid by GLD and to approve all withdrawal of funds from the company. Milton Schachtman, a Certified Public Accountant, was also retained to audit the company's books.

Also, a corporate checking account was opened at the Bank pursuant to a corporate resolution which authorized the payment of checks only upon the signatures of both Rothenberg and Doyle. The Bank approved the resolution and maintained a signature card with both Doyle's and Rothenberg's signature. A final safeguard in the Extension Agreement stated that if GLD ceased business operations, the Committee could "effect a liquidation of the assets and property of the debtor and the distribution of the proceeds to creditors."

From April, 1970 through August, 1970, Doyle orally requested 27 wire transfers totalling over $300,000 from GLD's account to Wilson Lamb Company in Colorado. The Bank transferred these funds and mailed a confirmation of the date and amount of each transaction the following day to GLD. Monthly statements of account reflecting the wire transfers were also sent to the company.

Despite the optimism surrounding the Extension Agreement, GLD continued to experience financial difficulties and in late 1970 a decision was made to cease operation and liquidate. Subsequently, the Committee discovered large quantities of lamb in freezers around the country. The meat was freezer burned and virtually worthless. It was later determined that the lamb was purchased with the funds transferred to Wilson Lamb Company and that the transfers were made on Doyle's request only. The Bank was then notified of the unauthorized transfers and asked to restore the funds. The notification letter was dated September 1, 1971, approximately 16 months from the date of the first transfer and 13 months from the last transfer.

It is not clear on the record now before the Court what transpired from September, 1971 until April 24, 1975. However, on the latter date GLD assigned its claim against the Bank to Nagle for one dollar consideration. Plaintiff then filed this suit in February, 1976.

As previously stated, the complaint alleges breach of contract, negligence, fraud and breach of fiduciary duty. Defendant has moved for summary judgment on five grounds: 1) this Court lacks subject matter jurisdiction under 28 U.S.C. § 1359; 2) Nagle is barred by the doctrines of waiver, estoppel and contributory negligence; 3) Nagle's action is barred by § 4–406 of the Uniform Commercial Code, Ill.Rev.Stat., ch. 26, § 4–406 (1977); 4) Nagle has failed to demonstrate facts supporting his allegations that the Bank participated in a scheme to defraud GLD; and 5) Nagle has not established any damages proximately caused by the Bank.

 Before addressing each of the issues raised, it is important to note that defendant has the burden of demonstrating that there are no triable issues of material fact. All "inferences must be drawn in the light most favorable to the party against whom the motion is directed and it is the duty of

the court to resolve all doubts as to the existence of genuine issues of material facts against the party moving for summary judgment." *International Assoc. of M. & A. W. Dist. No. 8 v. J. L. Clark Co.,* 471 F.2d 694, 697 (7th Cir., 1972).

## I

■■■ The first ground of defendant's motion for summary judgment involves a jurisdictional question, and thus, requires special consideration. Since a court cannot render a judgment if it lacks jurisdiction over the subject matter, the claim based on 28 U.S.C. § 1359 will be considered a motion to dismiss. *See Thompson v. United States,* 291 F.2d 67 (10th Cir., 1961). In addition, the burden of proving proper jurisdiction always rests upon the party asserting it. *O'Hare Int'l Bank v. Hampton,* 437 F.2d 1173 (7th Cir., 1971).

On the face of the complaint the jurisdiction of this Court has been properly invoked. Nagle has alleged that he is a citizen of Iowa and that defendant is a citizen of Illinois since its principal place of business is located in Chicago. In addition, the jurisdictional amount requirement is met. However, defendant claims that this Court does not have jurisdiction of this matter under 28 U.S.C. § 1359. That statute provides:

> *A district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court.*

■■ It is clear from the record before the Court that this action could not have been brought in a federal court if GLD had not transferred its claim against the Bank. However, the assignment alone is not proof of collusion. *See Kramer v. Caribbean Mills, Inc.,* 394 U.S. 823, 825–26, 828 n. 9, 89 S.Ct. 1487, 23 L.Ed.2d 9 (1969) and 28 U.S.C. § 1359 Reviser's Notes. A court must be convinced that the assignment was collusively made to create jurisdiction.

The leading case on collusive jurisdiction is *Kramer v. Caribbean Mills, Inc.,* 394 U.S. 823, 89 S.Ct. 1487, 23 L.Ed.2d 9 (1969). In

that case a Panamanian corporation had assigned a claim against a Haitian corporation to Kramer, a Texas resident. Simultaneously, Kramer agreed to pay back to the Panamanian company 95% of any judgment recovery. Kramer then filed suit in a federal district court.

The Supreme Court concluded that the assignment was collusively made, citing several factors. First, Kramer had no prior connection with the subject matter of the claim. Second, the assignment was made for consideration of only one dollar. Third, the Panamanian corporation would receive 95% of the judgment. Finally, plaintiff admitted that the assignment was substantially motivated by a desire to create diversity jurisdiction.

The Bank alleges that this case is indistinguishable from *Kramer.* First, defendant argues that plaintiff is not a proper party because he is a stranger to the disputed transactions, he has no personal stake in the matter and he must turn over any proceeds to the creditors of GLD. Second, defendant alleges that the suit is for the benefit of GLD and that there are no legitimate commercial reasons for assigning the claim to Nagle. Third, defendant claims that the one dollar consideration for the assignment and the fact that plaintiff will not bear the costs of litigation make the assignment colorable. Finally, it is claimed the assignment is collusive because plaintiff is in a position as chairman of the Committee to assign the claim from GLD to himself to manufacture diversity jurisdiction.

Plaintiff replies that the *Kramer* Court also stated that its decision did not affect any prior decisions involving an absolute transfer of a claim. In that situation, the assignment is not improper because the transferor retains no interest in the subject matter. 394 U.S. at 828 n. 9, 89 S.Ct. 1487. Nagle urges that *Bullard v. City of Cisco,* 290 U.S. 179, 54 S.Ct. 177, 78 L.Ed. 254 (1933), is one of the earlier cases unaffected by *Kramer.*

In *Bullard,* the Supreme Court found proper diversity jurisdiction even though

several assignments had resulted in Bullard and others becoming the plaintiffs. The case involved a bondholders' committee suing the City of Cisco, Texas to recover on bonds and coupons. The committee was formed pursuant to a protective agreement which provided for bondholders to assign their title in the bonds to the committee for the duration of the agreement. The original owners were all citizens of states other than Texas, but only three had claims which could meet the jurisdictional amount. In contrast, the bondholders' committee, which was also composed of citizens of states other than Texas, had an aggregate claim far in excess of the jurisdictional amount.

The defendant challenged the jurisdiction of the court and claimed the committee was not the actual owner of the bonds, but only a collection agency acting for the benefit of others who could not invoke federal jurisdiction individually. The Court rejected this argument, stating:

> We are of the opinion that the purpose of the agreement of January 3, 1930, was not to create a mere collection agency, nor to set up a merely colorable device for circumventing restrictions on federal jurisdiction, but to put the bonds and coupons—the owners of which were numerous and scattered—into an express trust—to be managed and administered by four trustees—for the purpose of conserving, salvaging and adjusting the investment—the municipal debtor having become financially embarrassed.

Nagle claims that this case is controlled by Bullard. He states that he has been acting as chairman of the Committee since its formation in 1968 and that the assignment was made to him in that capacity. Nagle further argues that he is suing on behalf of all the creditors as part of the Committee's attempt to protect the assets of GLD. Finally, plaintiff asserts that GLD has not retained any interest in this action because it will not recover any proceeds.

In response, defendant apparently accepts the fact that plaintiff is suing on behalf of the creditors. However, the Bank attempts to distinguish Bullard on three grounds. First, it is argued that Bullard is not controlling here because it did not involve the diversity of citizenship requirement. However, the issue in that case was whether the parties were collusively made or joined to invoke jurisdiction. The fact that the jurisdictional amount requirement was in question does not render the resolution of the collusion claim inapplicable.

Second, the Bank emphasizes that the bondholders' agreement in Bullard specifically provided that the committee could take legal action for the collection of the bonds, while the Extension Agreement in this case has no similar provision. Defendant supplements this point with affidavits of four creditors who state that they have not given authorization to Nagle to represent them in this matter. Apparently defendant is arguing that if plaintiff does not have the authority to sue on behalf of all the creditors, he must be a mere conduit to enable GLD to sue in federal court. However, the Extension Agreement clearly assigns to the Committee the task of attempting to liquidate and distribute GLD's assets. In addition, the complaint alleges Nagle is acting on behalf of GLD's creditors. We fail to see why the absence of specific authority from each creditor to act on its behalf renders the assignment of the claim collusive.

Finally, defendant argues that Bullard is distinguishable because the assignments there were made at the same time the bondholders' agreement was made and, thus, were integral parts of the agreement. In this case, the assignment was made seven years after the Extension Agreement was executed, but, obviously, it could not have been made at the time of the agreement. The events giving rise to the cause of action had not occurred in December, 1968. Although plaintiff has not offered an explanation for the assignment being made in 1975, the lapse in time itself does not discredit the alleged purpose for the assignment.

■ With *Kramer* and *Bullard* as guidelines, the record now before the Court does not convince us that the assignment to Nagle was collusively made to create federal diversity jurisdiction. The complaint alleges that plaintiff is suing on behalf of the creditors of GLD, and it is not disputed by the parties that the proceeds of any judgment will be distributed to the creditors. In addition, it is not contested that Nagle has acted as chairman of the Committee since its inception. The agreement which created the Committee provided that when GLD discontinued operations, the Committee should "attempt to agree upon and to effect a liquidation of the assets and property of the debtor and the distribution of proceeds to creditors and parties entitled thereto in . . . the most prompt, efficient and economical method. . . ." On deposition, Nagle estimated that the Committee met 12 to 15 times from December, 1968 to December, 1970, thus it was not just a paper organization.

These facts indicate a legitimate commercial reason for GLD to transfer its claim to Nagle. Plaintiff is not a stranger acting solely as a conduit through which GLD can sue in federal court; he is chairman of the Committee. In addition, GLD has not retained a direct interest in the action like the assignor in *Kramer*. Although GLD may derive an indirect benefit from a successful suit by partially absolving its debts, it would not receive any proceeds of a judgment. This case is similar to *Bullard* in these respects and we are not convinced that the assignment was made solely to create federal diversity jurisdiction.[1]

## II

Defendant's second ground for summary judgment is based upon theories of waiver, estoppel and contributory negligence. Basically, the Bank argues that if plaintiff had knowledge of the wire transfers made by Doyle alone, but did not object to them for 16 months, then he should not be able to recover the funds from the Bank. The cases have called this syllogism either the ratification of a practice resulting in a waiver of the claim, or an estoppel to plaintiff from asserting the claim because of a continued practice without objection. *Kroon v. Maxwell,* 297 F.Supp. 277 (E.D. Pa., 1969), aff'd 423 F.2d 680 (3rd Cir., 1970); *Kores Carbon Paper and Ribbons Mfg. Co. v. Western Office Supply Co.,* 349 Ill.App. 208, 110 N.E.2d 461 (1st Dist., 1953).

■ The Bank has presented several arguments on this issue, but we first consider the summary statement that the doctrines of waiver and estoppel apply if GLD alone and not the Committee had notice of the wire transfers. Although plaintiff is here because of an assignment of GLD's claim against the Bank, GLD was operating on the grace of its creditors pursuant to the Extension Agreement at the time the disputed transfers were made. Furthermore, it was for the creditors' benefit that the two-signature requirement was imposed. Accordingly, plaintiff should not be estopped simply because GLD may have had notice of the transfers.

The bulk of defendant's memoranda on this ground of the motion is devoted to the argument that the Committee had actual knowledge or that knowledge should be imputed to it. Under the syllogism presented, Nagle's claim would then be barred.

Defendant relies on two facts which are undisputed. First, GLD was sent daily confirmations of the wire transfers along with monthly statements of account. Second, Schachtman, the accountant retained by the Committee, stated that he was aware wire transfers were being made from the first month. From that factual premise the Bank argues that Nagle's claim should be denied on three separate theories.

The Bank first contends that Schachtman is an agent of the Committee so his knowledge must be imputed to the principal. Second, it is claimed that the Committee should be charged with knowledge of the

---

1. Nagle, as chairman of the Committee, is clearly not in the same position of control that a parent corporation is over its wholly owned subsidiary. Thus, we reject defendant's claim that cases concerning an assignment from a parent to a subsidiary are controlling here.

transfers because other funds had been similarly transferred to the companies for which the members of the Committee work. Finally, the Bank argues that the claim should be barred by contributory negligence because the accountant was negligent in not notifying the Committee that the wire transfers were being made by Doyle.

In response, Nagle claims that the Committee objected to the transfers as soon as they were discovered in September, 1971. He does not deny that notices of the transfers were sent to GLD or that Schachtman was aware transfers were being made. Plaintiff does deny, though, that the accountant knew that the transfers were made with only Doyle's approval because the bank statement only indicated that funds were transferred with the authorization of a Bank officer. Thus, plaintiff claims Schachtman reasonably believed that the Bank's authorization meant that both Doyle and Rothenberg had approved the wire transfers. If the accountant did not have knowledge that the funds were being transferred by Doyle alone, Nagle argues Schachtman had no reason to notify the Committee or the Bank.

Even if we accept defendant's proposition that as a matter of law a party with notice of a series of unauthorized transfers of bank funds cannot, 16 months later, recover damages, the question of knowledge of the breach is a genuine issue of material fact in this case. Nagle claims that the Committee did not know of the transfers until September, 1971. Defendant attempts to impute earlier knowledge to the Committee through Schachtman. However, drawing inferences most favorable to plaintiff, it cannot be said that Schachtman had knowledge that only Doyle approved the transfers. Similarly, inferences can be drawn that Schachtman was not negligent in failing to notify the Committee if he did not know the transfers had not received the double approval. With respect to the transfers made to the companies for which members of the Committee worked, the inference most favorable to plaintiff is that the members did not receive any notice of the matter in this case or at least that they did

not receive notice that only Doyle had authorized the payments.

█ It is clear that whether the Committee had knowledge of the disputed wire transfers when they were made is a genuine issue of material fact. Accordingly, summary judgment is denied on the second ground of defendant's motion.

### III

Defendant's third ground for summary judgment is that § 4–406 of the Uniform Commercial Code bars plaintiff's claim. In pertinent part that statute provides:

*(1) When a bank sends to its customer a statement of account accompanied by items paid in good faith in support of the debit entries or holds the statement and items pursuant to a request or instructions of its customer or otherwise in a reasonable manner makes the statement and items available to the customer, the customer must exercise reasonable care and promptness to examine the statement and items to discover his unauthorized signature or any alteration on an item and must notify the bank promptly after discovery thereof . . .*

*(4) Without regard to care or lack of care of either the customer or the bank a customer who does not within one year from the time the statement and items are made available to the customer (subsection (1)) discover and report his unauthorized signature or any alteration on the face or back of the item . . . is precluded from asserting against the bank such unauthorized signature or indorsement or such alteration.*

Ill.Rev.Stat. ch. 26, § 4–406.

It is clear that this case does not involve a failure to notify the Bank about an unauthorized signature on a check. At issue is the wire transfer of funds from a two-signature checking account upon the oral request of only one necessary party. However, defendant argues that the term "unauthorized signature" should be construed to encompass this situation.

The Bank's contention is a two-step argument. First, defendant urges that "unauthorized signature" should include the absence of a necessary signature. Second, if a missing signature is included, then a depositor should have the duty to notify a bank within a year of the absence of an oral approval for a wire transfer, also.

When memoranda were presented to the Court, only four jurisdictions (Illinois was not one) had considered whether § 4–406(4) applies to the absence of a necessary signature. Those courts are not in agreement on the issue. Compare *Pine Bluff Nat'l Bank v. Kesterson,* 257 Ark. 813, 520 S.W.2d 253 (1978) *and King of All Mfg., Inc. v. Genesee Merchants & Trust,* 69 Mich.App. 490, 245 N.W.2d 104 (1976) *with G & R Corp. v. American Sec. & Trust Co.,* 173 U.S.App. D.C. 215, 523 F.2d 1164 (1975) *and Wolfe v. University Nat'l Bank,* 270 Md. 70, 310 A.2d 558 (1973). Plaintiff has now brought to our attention a recent Illinois Appellate Court decision which held that § 4–406(4) was not meant to include the case of the absence of a necessary signature. *Madison Park Bank v. Field,* 64 Ill.App.3d 838, 381 N.E.2d 1030 (1978). Since Illinois law governs this case, we cannot accept defendant's argument.

■ The *Madison Park Bank* court rejected the contention that "unauthorized signature" includes the absence of a necessary signature because discovering a missing signature does not place upon a bank the "undue onus" which would result from a duty to detect unauthorized, altered or forged signatures. Clearly, the same rationale applies to a duty of discovering that a wire transfer has been requested by only one of two necessary parties. Accordingly, we decline to apply § 4–406(4) here and defendant's motion for summary judgment on this ground is denied.

### IV

The fourth ground of defendant's motion for summary judgment is that "Nagle has completely failed to demonstrate any facts supporting his allegations that the Bank participated in a scheme to defraud G. L.

Doyle & Co." To support this contention defendant claims that the general rule in Illinois is that fraud may be established by circumstantial evidence only if circumstances demonstrate fraud by clear and convincing evidence.

■ Although defendant may have correctly stated a general rule of law, the burden is on the Bank to establish that no genuine issue of material fact exists. Drawing inferences most favorable to plaintiff, the Bank has not met its burden.

Plaintiff has alleged that the Bank knew the purpose for which the bank account was opened. In addition, Doyle stated in deposition that an officer of the Bank told him not to mention the wire transfers to anyone because it may cause the Bank a "problem". Finally, the record shows that the Bank's initial response to the Committee's request for restoration of the funds was that the records of the transfers had been destroyed. Nagle presented these facts to establish a willful attempt to conceal the unauthorized transfers.

In reply, defendant has done little more than deny Nagle's version of the facts and reassert that the Committee had knowledge of the transfers soon after they were made. It is clear, then, that material issues of fact exist as to whether the Bank attempted to conceal the transfers. Thus, summary judgment on this ground is also denied.

### V

The final ground of the Bank's motion for summary judgment is that plaintiff has failed to present facts that demonstrate injuries sustained as the proximate result of the alleged wrongful actions of the Bank. Relying on *Industrial Sav. Bank v. People's Funeral Serv. Corp.,* 54 App.D.C. 259, 296 F. 1006 (1924) and *V of I Prod., Inc. v. California Bank,* 194 Cal.App.2d 897, 15 Cal.Rptr. 562 (1961), defendant claims that the wire transfers were used to pay legitimate corporate debts and, therefore, GLD sustained no damage as a result of the Bank's action.

Plaintiff responds by claiming that the Bank was aware that the checking account

was being supervised by the Committee and that the transfers did damage the creditors' interests in GLD. This argument is supported by claims that speculation in lamb was not the usual course of business for GLD and that the Extension Agreement authorized GLD to incur only necessary and reasonable expenses in the operation of its business.

Although both *Industrial Sav. Bank* and *V of I* involve bank payments without necessary authorization, defendant's reliance on those cases is inappropriate on a motion for summary judgment. In *Industrial Sav. Bank,* the court stated that no testimony had even been presented to show that the appellee corporation had been damaged. In *V of I,* the Court concluded, after examining contradictory testimony, that it "appeared" plaintiff had received the benefit of the payment made by the bank.

In this case, it is clear that contradictions exist as to whether the Bank was aware of the purpose of the checking account, whether Doyle's purchase of lamb was within GLD's usual course of business, and whether GLD and the creditors incurred injury because of the Bank's unauthorized payments for the lamb. Drawing inferences most favorable to plaintiff, we cannot rule as a matter of law that no damage was caused by the Bank.

Therefore, defendant's motions for summary judgment are denied.