John J. KRUSE and Leonard K. Jackson, Appellees,

v.

SNOWSHOE COMPANY, a West Virginia corporation, Appellant.

No. 83–1206.

United States Court of Appeals, Fourth Circuit.

Argued June 8, 1983.

Decided Aug. 10, 1983.

---

Deborah A. Sink, Chester, Va. (P. Michael Pleska, Bowles, McDavid, Graff & Love, Charleston, W. Va., on brief), for appellant.

James R. Snyder, Charleston, W. Va. (Thomas E. Potter, Jackson, Kelly, Holt & O'Farrell, Charleston, W. Va., John J. Kruse, Leonard K. Jackson, on brief), for appellees.

Before PHILLIPS and SPROUSE, Circuit Judges, and HAYNSWORTH, Senior Circuit Judge.

SPROUSE, Circuit Judge:

This is an appeal from an order of the district court granting John J. Kruse and Leonard K. Jackson's motion for a preliminary injunction against Snowshoe Company. The order prohibited Snowshoe, the operator of a ski resort located in West Virginia, from obstructing a road used by Kruse and Jackson for access to property contiguous to Snowshoe's resort property. Snowshoe contends on appeal that the district court should have abstained because some of the same issues involved in the federal action are being litigated in a parallel West Virginia state-court proceeding. We hold that the district court did not abuse its discretion in granting the preliminary injunction, and affirm.

Snowshoe purchased the ski resort property from Mower Lumber Company (Mower) in September, 1973. The deed reserved to Mower and its successors the right to use a road running over and along the boundary of the property, "Black Run Road," for purposes of ingress and egress to adjoining lands then owned by Mower. Contemporaneously with the execution of the deed, Snowshoe and Mower entered into an option agreement granting Snowshoe the right of first refusal to purchase certain lands adjoining its property for a limited period of time.

In 1982, Mower sought to sell a tract of land adjacent to Snowshoe's property, the "Silver Creek Property." When Snowshoe failed to exercise its option to purchase that property, Mower conveyed it to the Trustees for Mace Knob Land Company (the Trustees) on October 22, 1982. The deed included a provision granting to the Trustees an easement to use Black Run Road as a means of ingress and egress to the Silver Creek Property.

In the fall of 1982, Kruse and Jackson expressed an interest to the Trustees in developing the Silver Creek Property into a ski resort. The Trustees permitted Kruse and Jackson to enter upon the property for the purposes of surveying it and evaluating the feasibility of building the resort. Later in 1982, Kruse and Jackson purchased an option to buy the property. Beginning in early December, 1982, Snowshoe sought to prevent Kruse and Jackson's access to the Silver Creek Property by barricading Black Run Road.[1]

On December 1, 1982, Snowshoe filed an action in the Circuit Court of Pocahontas County, West Virginia, against Mower, the Trustees, Kruse and Jackson. The complaint sought a declaratory judgment concerning the right of first refusal granted to Snowshoe, and concerning the extent of the easement reserved to Mower in the 1973 deed.

Two days after the state action was filed, Jackson and Kruse filed the present action against Snowshoe in the United States District Court for the Southern District of West Virginia, raising common law and contract claims, and asserting violations of

---

1. Black Run Road apparently is the only means of access to the Silver Creek Property.

state and federal antitrust laws. The federal plaintiffs sought a temporary restraining order and preliminary and permanent injunctive relief requiring Snowshoe to remove all obstructions to plaintiffs' use of Black Run Road, and to desist from preventing the plaintiffs from using that road for access to the Silver Creek Property in the future.

The district court initially issued a temporary restraining order on December 3, 1982, and Snowshoe removed a bulldozer which had blocked the access road. On December 23, 1982, the district court held an evidentiary hearing on Kruse and Jackson's motion for a preliminary injunction, but reserved its ruling based upon an understanding that the *status quo* would be maintained pending the outcome of the state court action. After Snowshoe built a barrier across part of Black Run Road in late February and early March, 1983, the district court issued the preliminary injunction now in issue on appeal.

In the interim, the state trial court issued a partial summary judgment on February 1, 1983, holding that Snowshoe did not have an option to purchase the Silver Creek Property at the time the property was sold to the Trustees. Shortly before oral argument in this appeal, the state trial court also ruled on the issues relating to the use of Black Run Road, holding in favor of Kruse and Jackson.

Snowshoe does not challenge on appeal the propriety of granting the preliminary injunction under the balance-of-hardship test.[2] *See Blackwelder Furniture Co. v. Seilig Manufacturing Co.,* 550 F.2d 189 (4th Cir.1977). It instead argues that the district court abused its discretion in refusing to abstain from exercising jurisdiction because of the pendency of a parallel state-court action involving some of the same issues which are before the district court.[3]

■ The decision of whether to defer proceedings because of parallel state litigation is generally committed to the discretion of the district court.[4] The Supreme Court in *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), set forth the principles and standards for gauging the propriety of a district court's decision to abstain from exercising its jurisdiction. The Court first summarized the three traditional categories of abstention: (a) " 'cases presenting a federal constitutional issue which might be mooted or presented in a different posture by a state court determination of pertinent state law.' *County of Allegheny v. Frank Mashuda Co.,* 360 U.S. 185 [79 S.Ct. 1060, 3 L.Ed.2d 1163] (1959)"; (b) cases "where there have been presented difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case at bar"; and (c) cases "where, absent bad faith, harassment, or a patently invalid state statute, federal jurisdiction has been invoked for the purpose of restraining state criminal proceedings, state nuisance proceedings antecedent to a criminal prosecution, which are directed at obtaining the

---

**2.** The district court found that Kruse and Jackson would be irreparably harmed if they were unable to use Black Run Road during the pendency of the federal litigation because it would delay and possibly terminate their plans to build the ski resort, and that Snowshoe had alleged no legitimate harm. The court then found that injunctive relief was in the public interest in that the plaintiffs' plans involved the expansion of commercial activities in West Virginia, and that grave or serious questions were presented as to the parties' respective rights to use Black Run Road.

**3.** Snowshoe also argues in its reply brief that several of the district court's findings of fact in applying the balance-of-hardship test are clearly erroneous, and thus it improperly issued the preliminary injunction. That argument was not raised in Snowshoe's original brief, and thus was not addressed in the appellees' brief. In any event, we disagree with that contention.

**4.** *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* —— U.S. ——, ——, 103 S.Ct. 927, 937, 74 L.Ed.2d 765 (1983); *Will v. Calvert Fire Insurance Co.,* 437 U.S. 655, 663–65, 98 S.Ct. 2552, 2557–59, 57 L.Ed.2d 504 (1978).

closure of places exhibiting obscene films, or the collection of state taxes." *Id.* at 814–16, 96 S.Ct. at 1244–46 (citations omitted). The Court concluded that none of those categories applied to the case then before the Court. It nevertheless found that abstention was proper based on "considerations of '[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" *Id.* at 817, 96 S.Ct. at 1246, quoting *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.,* 342 U.S. 180, 183, 72 S.Ct. 219, 221, 96 L.Ed. 200 (1952). The Court stated, however, that in view of the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them,"[5] a federal court should abstain for "wise judicial administration" in only "exceptional circumstances."[6] The case before us clearly does not fall under any of the three traditional categories of abstention, and thus Snowshoe must rely on the exceptional-circumstances category applied in *Colorado River.*

■ The Supreme Court in *Colorado River* declined to precisely define the exceptional-circumstances test, but instead described some of the factors relevant to its application: (a) the assumption by a state court of jurisdiction over property; (b) the inconvenience of the federal forum; (c) the avoidance of piecemeal litigation; and (d) the order in which the concurrent forums obtained jurisdiction. *Id.* at 818–19, 96 S.Ct. at 1246–47. The Court, though, recently elaborated on the application of the exceptional-circumstances test in *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* —— U.S. ——, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), stating:

> [T]he decision whether to dismiss a federal action because of parallel state-court litigation does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a

given case, with the balance heavily weighted in favor of the exercise of jurisdiction. The weight to be given to any one factor may vary greatly from case to case, depending on the particular setting of the case. *Colorado River* itself illustrates this principle in operation. By far the most important factor in our decision to approve the dismissal there was the "clear federal policy . . . [of] avoidance of piecemeal adjudication of water rights in a river system," *id.,* at 819 [96 S.Ct. at 1247], as evinced in the McCarran Amendment. We recognized that the Amendment represents Congress's judgment that the field of water rights is one peculiarly appropriate for comprehensive treatment in the forums having the greatest experience and expertise, assisted by state administrative officers acting under the state courts. *Id.,* at 819–820 [96 S.Ct. at 1247–48]. In addition, we noted that other factors in the case tended to support dismissal—the absence of any substantial progress in the federal-court litigation; the presence in the suit of extensive rights governed by state law; the geographical inconvenience of the federal forum; and the Government's previous willingness to litigate similar suits in state court. *Id.,* at 820 [96 S.Ct. at 1247].

*Id.* at ——, 103 S.Ct. at 937. The Court in *Cone* noted two additional factors to consider in applying the exceptional-circumstances test: (a) whether the source of law is federal or state, and (b) the adequacy of the state court proceedings to protect the federal plaintiff's rights. *Id.* at —— –——, 103 S.Ct. at 942. The Court further said that the factors are to be applied "in a pragmatic, flexible manner with a view to the realities of the case at hand." *Id.* at ——, 103 S.Ct. at 939–40.

It is clear in the immediate case that the federal forum is not any less convenient to the parties than the state forum. Likewise,

---

**5.** *Colorado River,* 424 U.S. at 817, 96 S.Ct. at 1246.

**6.** *Id.* at 818, 96 S.Ct. at 1246.

it is doubtful that the state-court litigation involves the type of assumption of jurisdiction over a *res* or property that should have caused the district court to abstain from entertaining an action concerning the right of way. The priority factor, viewed pragmatically, also provides little justification for abstention. While it is true that the state action was filed first, the federal action was filed only two days later, and there has been substantial progress in both actions. *See Cone,* —— U.S. at ——, 103 S.Ct. at 939–40. Moreover, this case involves federal antitrust claims. Thus, not only is the source of law on that portion of the action federal, but the district court has exclusive jurisdiction over those claims. The Supreme Court in *Cone,* drawing from *Will v. Calvert Fire Insurance Co.,* 437 U.S. 655, 98 S.Ct. 2552, 57 L.Ed.2d 504 (1978), stated that "the presence of federal-law issues must always be a major consideration weighing against surrender," and that such consideration is even more significant when federal jurisdiction is exclusive. *Id.* at ——, 103 S.Ct. at 941–42. Furthermore, where the district court is presented with a claim over which it has exclusive jurisdiction, a policy opposite to the policy of avoidance of piecemeal litigation is present. *See Cone,* —— U.S. at ——, 103 S.Ct. at 941; *Calvert,* 437 U.S. at 673, 98 S.Ct. at 2562 (Brennan, J., dissenting). In view of these considerations, the district court did not abuse its discretion in refusing to abstain from exercising its jurisdiction in this case.

AFFIRMED.