**ALLSTATE INSURANCE CO., Plaintiff,**

v.

**HECHINGER CO., et al., Defendants.**

**No. CIV. A. 97–1321–A.**

United States District Court,
E.D. Virginia,
Alexandria Division.

Nov. 3, 1997.

Paulo E. Franco, Jr., Robins Kaplan Miller Ciresi, LLP, Washington, DC; David S. Evinger, Robins Kaplan Miller & Ciresi, LLP, Minneapolis, MN, Mark S. Grotefeld, Provizer Phillips Grotefeld & Dennenberg, PC, Chicago, IL, of Counsel, for Plaintiff.

Helgi Walker, Christopher H. Buckley, Jr., Gibson Dunn & Cruthcher LLP, Washington, DC, for Defendants.

## MEMORANDUM OPINION

ELLIS, District Judge.

This seemingly mundane subrogation case presents the important, but rarely litigated question whether an insurer can aggregate several claims to which it is subrogated in order to satisfy the amount-in-controversy requirement of diversity jurisdiction pursuant to 28 U.S.C. § 1332(a). Also presented, assuming subject-matter jurisdiction, is the question whether abstention is appropriate given that a similar, but not identical, case is pending in state court.

For the reasons that follow, the Court finds that subject-matter jurisdiction exists, and that abstention is inappropriate in the circumstances.

I[1]

This case arises out of two separate house fires allegedly caused by the defective nature of defendants' halogen lamps. Defendant Dana Lighting ("Dana") has its principal place of business in Florida and conducts business in the Commonwealth of Virginia. Dana manufactures a halogen floor lamp sold under the brand name "Torchiere." Defendants Hechinger and Hechinger Stores (collectively, "Hechinger") have their principal place of business in Maryland and conduct business in the Commonwealth of Virginia.

---

**1.** The dispositive facts are drawn from the complaint's allegations, which are taken as true for purposes of these threshold motions. *See Martin Marietta Corp. v. International Telecom. Satellite*

*Org.,* 991 F.2d 94, 97 (4th Cir.1993) (citing *Jenkins v. McKeithen,* 395 U.S. 411, 421–22, 89 S.Ct. 1843, 1848–49, 23 L.Ed.2d 404 (1969)).

Hechinger sells lumber, household goods, and other do-it-yourself items to home-owners.

Plaintiff Allstate Insurance Company ("Allstate"), an Illinois corporation that does business in Virginia, issued property-insurance policies to Bessie Walker and Wade Hinkle. Ms. Walker and Mr. Hinkle, neither of whom is a plaintiff in this action, each purchased a Torchiere Halogen Lamp in 1994 at a Hechinger store. On August 23, 1995, Walker's Torchiere lamp ignited a fire in the living room of her Suffolk, Virginia, home. Five days later, on August 28, 1995, a fire broke out in Hinkle's family room in the home he rented from Bernard Teunis in Arlington, Virginia; that fire, too, originated from a Torchiere lamp. The two fires caused extensive damage, and thus each insured sought indemnification from Allstate under their respective insurance policies. Allstate paid the two insureds a total of $107,807.03.[2]

Having paid Walker and Hinkle the full amount of their losses covered under the policies, Allstate is now subrogated to its insureds' rights pursuant to those policies. Thus, it is as subrogee that Allstate now brings this negligence action against defendants. The complaint alleges failure to inspect, failure to test, failure to warn, failure to design, and failure to manufacture properly. Also included in the complaint is a Virginia Consumer Protection Act claim alleging that defendants misrepresented the quality of the halogen lamps. Allstate seeks damages in the amount of $107,807.03, the amount it paid the insureds, plus an injunction prohibiting defendants from selling halogen lamps.

Defendants have filed a motion to dismiss for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1), Fed.R.Civ.P., and a motion to dismiss or stay proceedings.

**II**

Defendants contend that although the parties' citizenship is diverse, subject-matter jurisdiction is nonetheless lacking in this case because the amount-in-controversy requirement is not met.[3] Specifically, they argue that although the *ad damnum* clause seeks $107,807.03 in damages, that figure represents an impermissible aggregation of two separate claims, namely those of Walker and Hinkle.

A single plaintiff may join as many claims as it has against a particular defendant. See Rule 18(a), Fed.R.Civ.P. And it is settled that when such claims are properly joined, a plaintiff may also aggregate the damages sought in each claim to meet the amount-in-controversy requirement of § 1332(a), even if no individual claim exceeds the jurisdictional amount. *See Edwards v. Bates County,* 163 U.S. 269, 273, 16 S.Ct. 967, 969, 41 L.Ed. 155 (1896); *Shanaghan v. Cahill,* 58 F.3d 106, 109 (4th Cir.1995).[4] Multiple plaintiffs, however, can aggregate their claims only if they are suing on a shared right or undivided interest, such as when both plaintiffs are parties to the same contract. *See Feikema v. Texaco, Inc.,* 16 F.3d 1408, 1412 (4th Cir.1994); *Glover v. Johns–Manville Corp.,* 662 F.2d 225, 231–32 (4th Cir.1981).

From these settled principles, it follows that Walker and Hinkle, as two separate plaintiffs, could not have joined their claims against defendants to reach the § 1332(a) jurisdictional amount because they do not have shared rights; rather, they have two distinct claims against defendants. *See Zahn v. International Paper Co.,* 414 U.S. 291, 294–95, 94 S.Ct. 505, 508–09, 38 L.Ed.2d 511 (1973) (stating rule that when plaintiffs do not have shared rights, each plaintiff must

---

**2.** The complaint does not indicate the amount paid to each insured separately. In its opposition papers, Allstate discloses that it paid over $69,000 to Walker and over $38,000 to Hinkle.

**3.** Federal courts have diversity jurisdiction in any civil action "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states...." 28 U.S.C. § 1332(a)(1).

**4.** And this aggregation rule "operates whether or not the claims involved arise out of the same transaction or occurrence." 6A Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, *Federal Practice and Procedure* § 1588, at 537 (2d ed.1990).

satisfy jurisdictional amount). Defendants assert that Allstate, as subrogee of Walker and Hinkle, is similarly foreclosed from aggregating these claims. Yet this argument is unpersuasive for it ignores the important difference between separate claimholders (Walker and Hinkle) seeking to aggregate their separate claims, and a single claimant (Allstate) seeking to aggregate its various, wholly owned claims.

A subrogee that has paid out claims to its insureds is the real party in interest in the subrogation litigation based on those claims.[5] And as real party in interest, the insurer-subrogee *owns* the substantive rights on which it sues. *See Aetna Cas.,* 338 U.S. at 380, 70 S.Ct. at 215. Therefore, just as an individual can aggregate the claims it owns to meet the jurisdictional amount, so, too, can a subrogee aggregate the claims to which it is subrogated, and hence owns, to meet the jurisdictional amount.

Though the Supreme Court has never squarely addressed this issue, it has held in an analogous context that "it is quite plain that [a real party in interest can] sue in the federal court notwithstanding [the fact that the original claimants], by reason of their small holdings, may have been unable to do so." *Bullard v. City of Cisco,* 290 U.S. 179, 188, 54 S.Ct. 177, 180, 78 L.Ed. 254 (1933); *see also Assurance Alliance, Inc. v. Kujak Transport, Inc.,* 829 F.Supp. 1021, 1022 (N.D.Ill.1993) (implying that when insurer is real party in interest, it may aggregate multiple claims against a single defendant). In *Bullard,* the plaintiffs held title to certain bonds and coupons that had been transferred to them in trust by multiple beneficiaries. The Supreme Court concluded that, because the plaintiffs' ownership of the claim on the bonds and coupons was "real," *i.e.,* they held full title to them, they had the right to aggregate the individual bond claims for the purpose of meeting the jurisdictional amount. *See* 290 U.S. at 190, 54 S.Ct. at 181. This was so even though the individual beneficiaries of the bonds were foreclosed from invok-

ing federal jurisdiction given that no single claim met the jurisdictional amount. *See* 290 U.S. at 188, 54 S.Ct. at 180; *see also Kujak,* 829 F.Supp. at 1022 (stating that amount in controversy should be measured relative to real-party-in-interest's stake in action). Though *Bullard* was decided on facts slightly different from those at bar, the principles announced therein control disposition of this case. Simply put, Allstate may aggregate the claims to which it is subrogated because, like the plaintiffs in *Bullard,* it is the real party in interest with respect to those claims; it owns them.

Support for this conclusion is found in the few cases that have considered this issue. First, in *Ministry of Health v. Shiley Inc.,* 858 F.Supp. 1426 (C.D.Cal.1994), two Canadian provinces that insured their citizens brought a declaratory judgment action seeking a declaration that they would be entitled to reimbursement from defendants for future medical costs incurred as a result of defendants' negligence. The district court held there that the plaintiffs were able to meet the amount-in-controversy requirement even though the injury any one insured could suffer would not likely exceed the jurisdictional amount. The district court based this conclusion on the fact that the total costs incurred as a result of the injuries suffered by several insureds, when added together, would be sufficient to carry the plaintiffs over the § 1332 threshold. In so concluding, the district court relied on *Hunt v. Washington State Apple Advertising Commission,* 432 U.S. 333, 347, 97 S.Ct. 2434, 2443, 53 L.Ed.2d 383 (1977), in which the Supreme Court observed that " 'It is well established that the amount in controversy is measured by the *value of the object of the litigation.*' " 858 F.Supp. at 1431 (alteration in original) (quoting *Hunt* ).

A second case addressing this issue, *Liberty Mutual Insurance Co. v. Tel–Mor Garage Corp.,* 92 F.Supp. 445 (S.D.N.Y.1950), concerned a factual scenario quite similar to the

---

**5.** See *United States v. Aetna Cas. & Sur. Co.,* 338 U.S. 366, 380–81, 70 S.Ct. 207, 215–216, 94 L.Ed. 171 (1949) (finding that insurer-subrogee who pays entire loss suffered by its insured is the real party in interest); *Virginia Elec. & Power Co.*

*v. Westinghouse Elec. Corp.,* 485 F.2d 78, 83 (4th Cir.1973) (defining real party in interest as the "person who possesses the right to enforce the claim and who has a significant interest in the litigation").

case at bar. In *Tel–Mor*, three insureds suffered losses from a fire allegedly caused by the defendants, and they were subsequently indemnified by the plaintiff-insurer. The district court noted that once the insurer had paid its insureds in full, it was the only real party in interest. Therefore, the district court allowed the plaintiff-insurer to aggregate the three separate claims to which it was subrogated, and thereby to meet the amount in controversy. *See id.* at 446.[6]

A third case, though decided outside the insurance context, also supports the result reached here. In *Cashmere Valley Bank v. Pacific Fruit & Produce Co.*, 33 F.Supp. 946 (E.D.Wash.1940), the plaintiff bank held three crop mortgages on two different apple grower's crops. When the growers delivered their apples to the defendant produce company's warehouse and the defendant subsequently sold the apples, the bank sued the produce company for conversion, based on the several liens it had on the growers' crops. The district court found that although the bank was bringing three separate causes of action, each "arising out of a separate instrument," the total of all claims could be used to satisfy the amount-in-controversy requirement. *See id.* at 947–48. Notwithstanding the fact that each individual claim fell below the requisite jurisdictional amount, the court there found diversity jurisdiction over the plaintiff-lienholder's several claims because the plaintiff "ha[d] a separate right in each [claim]." *Id.* at 949–50. In other words, it did not matter that no claim could have supported diversity jurisdiction on its own, nor that the plaintiff was joining separate claims that could have been brought by separate individuals in separate actions. What was essential was the fact that the plaintiff had the right to bring these claims on its own behalf, and that aggregated the individual claim amount exceeded the jurisdictional amount.

Somewhat surprisingly, research has disclosed no decisions in point other than these three.[7] Yet, the paucity of precedent casts no doubt on the result reached here, as that result follows inexorably, as the following syllogism demonstrates:

(1) Allstate, having paid its insureds' claims under the policies is, by way of subrogation, the real party in interest with respect to, and the owner of, the insureds' claims against defendants.[8]

6. The insurer's status as real party in interest was actually discussed as a basis for using the insurer's citizenship—and not that of the insureds—for purposes of establishing diversity. The district court then went on, in a separate paragraph, to hold that "combining the three claims to constitute the required jurisdictional amount was proper," citing Rule 18(a), Fed. R.Civ.P., and *Bullard*, 290 U.S. 179, 54 S.Ct. 177, 78 L.Ed. 254. *See* 92 F.Supp. at 446. While the district court did not specifically mention the insurer-subrogee's status in analyzing the amount-in-controversy issue, the court's justification for relying on the insurer's citizenship, namely its status as real party in interest, applies equally to the determination of whether the jurisdictional amount has been met.

Here, as in *Tel–Mor*, Allstate alleges diversity based on its own citizenship, not that of Walker or Hinkle. Were defendants correct that the amount in controversy is measured with respect to each insured, and not with respect to Allstate, then it would follow that the question of diversity of citizenship should also be decided based on those individuals' domicile, not that of Allstate. However, it is settled beyond dispute that "[t]he insured's citizenship is not considered for purposes of diversity of citizenship." *Virginia Elec. & Power*, 485 F.2d at 83 n. 8. Similarly, the amount in controversy should be measured by the subrogee's total loss, not the loss of each insured separately.

7. Allstate cites a fourth case, *United Pacific/Reliance Insurance Cos. v. City of Lewiston*, 372 F.Supp. 700 (D.Idaho 1974), but closely read, that case is of no avail to plaintiff. Indeed, the district court there dismissed certain counts of the complaint because some of the plaintiff-insurers could not meet the amount-in-controversy requirement. *See id.* at 702.

8. Against this proposition, defendants cite and quote from *Admiral Towing v. Seatrain International, S.A.*, 767 F.2d 243, 250 (5th Cir.1985) (defining subrogation as "the right to assert the claim of another") and *Insurance Co. of North America v. United States*, 76 F.Supp. 951, 953 (E.D.Va.1948) ("Equitable subrogation ... is not a separate claim; it is still the injured person's claim although enforced by another."). Yet neither case, read carefully, addresses or contradicts the proposition that a subrogee is the real party in interest and owner of the subrogated claim. Rather, the *Admiral Towing* and INA courts were simply stating the long-standing rule that a subrogee cannot obtain rights any greater than those originally held by the subrogor. *See Admiral Towing*, 767 F.2d at 250; *INA*, 76 F.Supp. at 953. Indeed, the Supreme Court case

(2) The real party in interest with respect to various individual claims, i.e., the owner of these various claims, may aggregate them to meet the jurisdictional amount. (3) So, it follows that Allstate, which acquired two claims by subrogation and is the real party in interest with respect to these claims, may aggregate them for the purpose of meeting the jurisdictional amount.[9]

Accordingly, the Motion to Dismiss for lack of subject-matter jurisdiction must be denied.

### III

Defendants next contend that even assuming the existence of subject-matter jurisdiction, the Court should either stay or dismiss the instant proceedings because there is a similar action pending in the Circuit Court of Arlington, Virginia. The plaintiff in the state court action, USAA Property & Casualty Insurance ("USAA"), insured Bernard Teunis, the owner of the property in which Mr. Hinkle, one of the insureds in this case, lived. After Hinkle's halogen lamp allegedly ignited the fire and caused damage in Teunis's home, USAA paid Teunis $58,893.93 pursuant to Teunis's USAA insurance policy. USAA, as subrogee of Teunis, has now sued the same defendants as are named in this case, on the same theories advanced in this case, namely

negligence, product liability, and violation of the Virginia Consumer Protection Act.[10] Defendants assert that these facts are sufficient to warrant federal abstention.

■ "Abstention from the exercise of federal jurisdiction is the exception, not the rule." *Colorado River Water Conserv. Dist. v. United States,* 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976). According to the Supreme Court, abstention is appropriate in only three discrete sets of circumstances: (i) in certain limited cases that involve a federal constitutional issue; (ii) in cases that "present[ ] difficult questions of state law bearing on policy problems of substantial public import"; and (iii) in cases in which federal jurisdiction has been invoked to restrain state criminal proceedings. See id. at 813–16, 96 S.Ct. at 1243–46; *see also Kruse v. Snowshoe Co.,* 715 F.2d 120, 122 (4th Cir.1983) (restating the *Colorado River* factors). Beyond this, as the Fourth Circuit has observed, the Supreme Court has identified a "fourth and more general" situation warranting the dismissal or stay of a federal action—"one in which a concern for judicial economy justifies the exercise of a district court's discretion to abstain where there is on-going state-court litigation of the same issues implicated by the proposed federal suit." *Cox v. Planning Dist. I,* 669 F.2d 940, 942 (4th Cir.1982).[11] Such dismissal,

---

on which *INA* relies stands for that very proposition. *See United States v. American Tobacco Co.,* 166 U.S. 468, 474, 17 S.Ct. 619, 621, 41 L.Ed. 1081 (1897) ("The insurance companies, *as such,* have no right of action against the government. It is the right of the claimant, the tobacco company, which is to be passed upon . . . ."(emphasis added)). Here, Allstate does not assert any claims greater than could have been brought by the individual insureds against defendants. Accordingly, defendants' reliance on *Admiral Towing* and *INA* is misplaced.

**9.** It is true, as defendants argue, that but for the fortuity that Allstate happened to be the insurer in both fires, the claims could not be adjudicated in federal court. The short answer to this argument is that fortuity is simply immaterial; it would have been no less fortuitous had the sum of the claims fallen short of the requisite amount, or had one claim, by itself, exceeded it.

Similarly unpersuasive is defendants' "floodgates" argument. There is no reason to believe that allowing subrogees to aggregate subrogated claims will flood the federal courts with such

cases. Indeed, there is reason to believe the contrary since no flood has yet occurred despite existing authority allowing aggregation of subrogated claims by subrogees to meet the jurisdictional amount. In any event, Congress, as architect of diversity jurisdiction, may act to restrict the scope of this jurisdiction by foreclosing subrogees from aggregating claims to meet the jurisdictional amount.

**10.** Both Allstate and USAA are represented by the same counsel.

**11.** This fourth basis for staying or dismissing an action does not, technically speaking, fall under the rubric of "abstention." That term, properly used, applies only to the three limited scenarios described above. *See Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 14–15, 103 S.Ct. 927, 936–37, 74 L.Ed.2d 765 (1983). This latter circumstance is more accurately denominated as a dismissal based on reasons of judicial economy. *See Colorado River,* 424 U.S. at 817, 96 S.Ct. at 1246. Nevertheless, over the years

however, is proper only in "exceptional" circumstances, indeed, in more limited circumstances than would justify traditional abstention. *See Colorado River*, 424 U.S. at 818, 96 S.Ct. at 1246. Underlying this exhortation is the notion that a federal court should not abstain from hearing a case over which it has jurisdiction unless the federal action "duplicates" the state action. *See McLaughlin v. United Va. Bank*, 955 F.2d 930, 931 (4th Cir.1992). More specifically, in a statement that appears to have presaged this case, the Fourth Circuit has cautioned that just because "a concurrent state court proceeding ... arises out of and involves the same underlying set of operative facts as does [the federal action, it] does not duplicate it." *TransDulles Ctr., Inc. v. USX Corp.*, 976 F.2d 219, 224 (4th Cir.1992). Of course, to qualify as duplicative, the two actions need not be identical; still, both cases must include "substantially the same parties litigat[ing] substantially the same issues." *New Beckley Mining Corp. v. International Union, UMWA*, 946 F.2d 1072, 1073 (4th Cir.1991). Only then may abstention be proper.

The circumstances justifying dismissal, or abstention, are narrowly circumscribed because the federal district courts enjoy a "virtually unflagging obligation ... to exercise the jurisdiction given them." *Colorado River*, 424 U.S. at 817, 96 S.Ct. at 1246; *see id.* (" '[T]he pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction ....' " (quoting *McClellan v. Carland*, 217 U.S. 268, 282, 30 S.Ct. 501, 504, 54 L.Ed. 762 (1910))); *accord McLaughlin*, 955 F.2d at 934. As Chief Justice Marshall opined over one hundred seventy years ago,

the federal judiciary has "no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given. The one or the other would be treason to the constitution." *Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264, 404, 5 L.Ed. 257 (1821); *see also Cone*, 460 U.S. at 16, 103 S.Ct. at 937 ("[T]he decision whether to dismiss a federal action because of parallel state-court litigation does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction.").

Ultimately, "[t]he decision of whether to defer proceedings because of parallel state litigation is generally committed to the discretion of the district court." *Kruse*, 715 F.2d at 122.[12] In light of this, the Supreme Court has prescribed several factors district courts should weigh in deciding whether or not to stay or dismiss a parallel federal action: (i) the inconvenience of the federal forum; (ii) the desirability of avoiding piecemeal litigation; and (iii) the order in which each forum obtained jurisdiction. *See Colorado River*, 424 U.S. at 818, 96 S.Ct. at 1246. As to the last factor, "priority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." *Cone*, 460 U.S. at 21, 103 S.Ct. at 939. This is so because the determination rests on "considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Colorado River*, 424 U.S. at 817, 96 S.Ct. at 1246. These principles counsel, on the facts of this case, against dismissal and against a stay.[13]

First, none of the traditional abstention factors announced in *Colorado River* is pres-

---

the term "abstention" has been used to encompass both the three specific situations outlined in *Colorado River* and the fourth circumstance based on judicial economy. *See* 17A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4247, at 150 (2d ed.1988).

**12.** Defendants assert that there is even greater judicial discretion in this case because Allstate seeks a declaratory judgment. *See Wilton v. Seven Falls Co.*, 515 U.S. 277, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995) (discretion to abstain is broader when pending federal case is brought

under federal Declaratory Judgment Act). Though plaintiff seeks a declaratory judgment as part of its Virginia Consumer Protection Act claim, the predominant issues in this case arise under state-law doctrines of negligence. Thus, unlike *Wilton*, this is not, in the main, a "declaratory judgment" case.

**13.** The factors discussed in *Colorado River* and its progeny apply equally to motions to dismiss and motions to stay; the analysis is the same for each. *See Cone*, 460 U.S. at 28, 103 S.Ct. at 943.

ent here. There is no federal constitutional issue, there are no difficult questions of state law (this is a straightforward negligence/product-liability action), and there are no pending state criminal proceedings.

Second, the duplicative-actions factor does not apply to these facts. The concept of duplicative litigation contemplates the same parties advancing the same legal theories in two different cases. *See New Beckley Mining,* 946 F.2d at 1073; *see also TransDulles,* 976 F.2d at 224 (affirming district court's refusal to abstain in diversity case when parties and legal theories were different in state and federal actions). Here, the parties are different in each case, and there is some potential difference in the legal theories that will be invoked. In the federal action, the plaintiff is Allstate, Walker's and Hinkle's insurer. In the state action, the plaintiff is USAA, the insurer of Hinkle's landlord. Furthermore, although both complaints contain similar factual allegations and identical legal claims, there is a possibility that the federal action may include additional issues, arguments, or even defenses (such as contributory negligence) not raised in the state action. This is so because the insured in the state action (the landlord) is not involved in this action,[14] and also because the federal action encompasses the losses of Walker, losses that are not the subject of the state proceeding. Thus, a finding in favor of defendants in the state court would have no bearing on plaintiff Allstate's right or ability to prevail in this action in federal court. There would be no issue preclusion because Allstate is not a party to that state litigation. *See Sea–Land Servs., Inc. v. Gaudet,* 414 U.S. 573, 593, 94 S.Ct. 806, 818, 39 L.Ed.2d 9 (1974) (stating rule that nonparty to prior action cannot be bound by judgment in that action); accord *Ciaffone v. Community Shopping Corp.,* 195 Va. 41, 77 S.E.2d 817, 824 (1953).[15] In other words, the state court proceedings will not fully resolve all the issues presented in federal court, and therefore abstention is improper. *See Cone,* 460 U.S. at 26, 103 S.Ct. at 942 (affirming appellate court's reversal of stay when state proceedings were inadequate to protect nonmovant's rights).

Third, although this Court has the discretion to stay or dismiss this case in the interests of judicial efficiency and administration, that course is ill advised in these circumstances. This forum is no less convenient than the Circuit Court of Arlington; the two courthouses are only a few miles apart. Moreover, there is no likelihood of piecemeal litigation if this action is heard now; indeed, if anything, it is the state court action that encourages piecemeal litigation, as it involves only one of the fires, whereas this action encompasses both. Finally, neither case is significantly further along than the other.[16] *See Cone,* 460 U.S. at 21, 103 S.Ct. at 939. Accordingly, the Motion to Dismiss or Stay Proceedings must be denied.

An appropriate order has issued.

The Clerk is directed to send a copy of this Memorandum Opinion to all counsel of record.

---

**14.** An insured tenant's contributory negligence cannot be imputed to his landlord. *Cf. Virginia Transit Co. v. Simmons,* 198 Va. 122, 92 S.E.2d 291, 294 (1956) (joint enterprise must exist before imputing negligence from one party to another); *A.B. Brown & Oliver Farm Equipment Sales Co. v. Waltrip,* 167 Va. 293, 189 S.E. 342, 343 (1937) (must have master-servant relationship to impute negligence). Therefore, defendants may argue Hinkle's contributory negligence as a defense in this action, even though they likely could not do so in the state action.

**15.** Nor could Allstate use offensive collateral estoppel in the federal action were these defendants to lose in the state action because Virginia, unlike some jurisdictions, does not allow offensive collateral estoppel. *See Norfolk & W. Ry. Co.* v. Bailey Lumber Co., 221 Va. 638, 272 S.E.2d 217, 219 (1980) ("In Virginia, the established rule is that collateral estoppel requires mutuality, especially when the estoppel is used 'offensively.'" (citations omitted)). And in this diversity action, state res judicata principles control. *See Parsons Steel, Inc. v. First Ala. Bank,* 474 U.S. 518, 523, 106 S.Ct. 768, 771, 88 L.Ed.2d 877 (1986).

**16.** Discovery has been served in both cases. Moreover, at the time the instant motions were filed, defendants had filed an answer in state court, but not in federal court. Presumably, however, given that the federal lawsuit derives from state-law principles and is based on some of the same facts, the answer to be filed here will be similar to that filed in Arlington.